UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**VELVET ANN SAULSBERRY,**       CASE NO. 5:23-cv-00377-GAP-PRL

    **Plaintiff,**

v.

**BILLY WOODS in his official capacity
as SHERIFF of MARION COUNTY, and
MARION COUNTY, FLORIDA, a political
subdivision of the State of Florida,**

    **Defendant.**
_____ /

## AMENDED COMPLAINT

Plaintiff, VELVET ANN SAULSBERRY, hereby sues Defendant, BILLY WOODS, SHERIFF, MARION COUNTY, FLORIDA in his official capacity, and MARION COUNTY, FLORIDA, a political subdivision of the State of Florida, and alleges:

## JURISDICTION

1. This is an action brought under Chapter 760, Florida Statutes, and Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq.. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars ($75,000.00).

**THE PARTIES**

3. At all times pertinent hereto, Plaintiff, VELVET ANN SAULSBERRY, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class because of her race, African American and because she reported race discrimination and has been the victim of retaliation thereafter. Plaintiff is the fee owner of, and resides at, the property located at 10731 SW 27th Avenue (hereinafter "Plaintiff's property"). A copy of Plaintiff's deed to the subject property is attached as Exhibit A.

4. At all times pertinent hereto, Defendant, BILLY WOODS ("Sheriff"), in his Official Capacity as the Sheriff of Marion County, has operated the Marion County Jail (MCJ) and has been organized and existing under the laws of the United States. At all times pertinent to this action, Defendant Sheriff has been an "employer" as that term is used under the applicable laws identified above. Defendant Woods is Plaintiff's employer as it relates to these claims.

5. At all times pertinent hereto, Defendant, MARION COUNTY, FLORIDA ("County"), has been organized as a political subdivision of the State of Florida, with eminent domain powers granted under § 127.01, Florida Statutes.

Plaintiff's property involved in this action is situated within the territorial jurisdiction of Defendant County.

## CONDITIONS PRECEDENT

6. Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE FACTS

7. Plaintiff, who is African American, began her employment with Defendant Sheriff in June 2006 and, at all times pertinent to this action, worked as a Detention Deputy at Defendant Sheriff's Marion County Sheriff's Office (MCSO) located at 629 NW 30th Ave. Ocala, FL 34475. She was fired by Defendant Sheriff effective November 8, 2018.

8. After her termination, Plaintiff filed a charge of discrimination/retaliation with the EEOC and she then filed a lawsuit against the Defendant Sheriff which is still pending.

9. During the pendency of the lawsuit, Defendant Sheriff has continued to retaliate against Plaintiff and to treat her differently based on her race.

10. Specifically but without limitation, on January 14, 2022, after Plaintiff was essentially threatened by a white neighbor who had been circling Plaintiff's home by driving on a dirt driveway within Plaintiff's property, she was approached by two deputies employed by Defendant Sheriff, one of whom was Deputy Donely.

11. During that meeting, Plaintiff advised the deputies that she was having her grass cut and that she was repairing and adding fencing to prevent the unauthorized use of her driveway and to exclude uninvited persons from Plaintiff's property. She also provided the deputies with her property survey showing that the land and driveway were owned by her, unencumbered, and there were no roadway easements encumbering Plaintiff's property. The only easements encumbering Plaintiff's property are for utility purposes and are not in the location of Plaintiff's driveway.

12. A short time later, Sgt. Winkler, from Defendant Sheriff, arrived and was advised by the other two deputies that they had seen Plaintiff's survey and knew that Plaintiff owed the land.

13. Around that time, pickup trucks began arriving and Sgt. Winkler told the occupants of the pickup trucks that the dispute between them and Plaintiff regarding use of the driveway was civil and that they should sue Plaintiff for an easement violation. However, Winkler knew that there were no easements on the property based on the papers that Plaintiff provided to him and the other two deputies and based on papers that he personally pulled up on the Marion County Property Appraiser's website.

14. Winkler, and by that time Lt. Tim Andrews, who arrived at Plaintiff's property, without any legal authority, ordered that Plaintiff remove fence posts

across her property to allow her neighbors to use what they called a county roadway on Plaintiff's property. There was no county roadway on Plaintiff's property.

15. Winkler and Andrews then threatened to arrest Plaintiff and remove her from her land. The charge that they came up with was littering and blocking the newly declared county road. The littering charge was for materials belonging to Plaintiff placed on Plaintiff's own property and, again, there was no county road on Plaintiff's property that Plaintiff could block or litter upon.

16. Defendant Sheriff's agents and employees at Plaintiff's property, then allowed the neighboring property owners to measure Plaintiff's land as if they were surveyors to allow them to claim access that the neighboring property owners did not have.

17. Later that same day, around 6:00 p.m., two additional men arrived at Plaintiff's property and told Plaintiff that they were engineers from Defendant County.

18. These engineers told Plaintiff that they did not have the surveys of her property and could not identify where her property ended or where the "right of way" began. There was no "right of way" on Plaintiff's property. They then advised that they were creating a right of way on her land for public use and were going to take the poles out of the ground. The engineers from Defendant County said that they were declaring the area along the west boundary that runs north and south defining

5

her property as the roadway for the use of the public, meaning the neighbors, all of whom were white.

19. With Defendant Sheriff's agents and officers approval and consent, six polls and fencing where removed from Plaintiff's property without Plaintiff's consent and over her objection.

20. Plaintiff commented and advised all of the deputies and the engineers that she was clearly being threatened by the neighbors and allowing them access to her property would essentially provide them with access to her back door. She then asked both of the men from Defendant County to leave her property as they were trespassing. She also asked the deputies on scene to write a theft report for her property that had been removed by the agents of Defendant County, which request was ignored and denied. Winkler then threatened to arrest Plaintiff again for blocking her road based on the Defendant County's employees declaring her driveway to be a public right of way. Winkler also warned Plaintiff that if he returned and discovered that she had again closed off her driveway, he would arrest her for a misdemeanor, blocking a public road.

21. The two men from Defendant County then provided Plaintiff with a document that described an easement on lot 36 - Plaintiff owned lot 25. She told these men that they were trying to willfully deceive her.

22. A county road sign was installed to further represent to the public that the Defendant County had taken over the driveway for public use. Plaintiff believes, and therefore alleges, that the road sign was installed by agents or employees of Defendant County.

23. Plaintiff filed an internal affairs (IA) complaint with Defendant Sheriff against Winkler and Andrews for their role in the actions described above.

24. On April 3, 2022, Plaintiff contacted the Defendant Sheriff's office to complain of additional trespassing and the deputy who responded issued trespass warnings to two of Plaintiff's neighbors. However, two days later, Lt. Tracy Bazemore and another deputy came to Plaintiff's residence and stated that Bazemore had withdrawn and removed the two trespass warnings. Bazemore stated that "per the Sheriff", the land was in dispute and was open to the public. Bazemore further stated that no one would be charged for trespassing on Plaintiff's property and that the Office of the Sheriff had given permission for Plaintiff's land to be freely travelled and maintained by the neighbors or anyone else who wanted to be on it.

25. Plaintiff was also told at that time that the IA complaint that she filed had been removed from IA and was to be investigated by Bazemore.

26. On April 9, 2022, one of Plaintiff's neighbors, Tyrone House, empowered by Defendant Sheriff, returned to her property and began driving his

tractor back and forth widening Plaintiff's dirt driveway without Plaintiff's permission or consent.

27. On April 16, 2022, Plaintiff was threatened by a neighbor and contacted the Defendant Sheriff for assistant. She was told by a Sgt. Watts that he did not care about her survey or property and was not going to get involved in a "cluster f___" with her neighbors.

28. The Defendant Sheriff's response to Plaintiff's repeated requests for assistance to prevent her neighbors and others from coming onto her property have gone unanswered and she has been told that her land did not belong to her, per "the Sheriff."

29. The actions and inactions taken against Plaintiff above are nothing short of harassment and constitute ongoing discrimination against Plaintiff based on her race and retaliation due to discrimination and retaliation charges and a lawsuit against Defendant Sheriff.

30. Defendants have acted in concert to prevent Plaintiff from excluding others from Plaintiff's property who are themselves engaged in racially motivated harassment and causing damages to Plaintiff's property.

31. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## RACE DISCRIMINATION
### (Against Defendant SHERIFF)

32. Paragraphs 1 through 31 are re-alleged and incorporated herein by reference.

33. This is an action against Defendant Sheriff for discrimination based upon race brought under 42 U.S.C. §2000e et seq. This is a disparate treatment claim.

34. Plaintiff has been the victim of discrimination on the basis of her race in that she was treated differently than similarly situated white residents and has been subject to hostility and poor treatment on the basis, at least in part, of her race. This has impaired Plaintiff's rights as set forth above.

35. Defendant Sheriff is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

36. Furthermore, Defendant Sheriff knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

37. In essence, the actions of agents of Defendant Sheriff, which were each condoned and ratified by Defendant Sheriff, were of a race-based nature and in violation of the laws set forth herein.

38. The discrimination complained of herein affected Plaintiff's rights to her property subsequent to her termination from her employment with Defendant Sheriff.

39. Defendant Sheriff's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §2000e et seq.

40. As a direct and proximate result of Defendant Sheriff's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## COUNT II
## RACE DISCRIMINATION - CHAPTER 760
### (Against Defendant SHERIFF)

41. Paragraphs 1 through 31 are re-alleged and incorporated herein by reference.

42. This is an action against Defendant Sheriff for discrimination based upon race brought under 42 U.S.C. §2000e et seq. This is a disparate treatment claim.

43. Plaintiff has been the victim of discrimination on the basis of her race in that she was treated differently than similarly situated white residents and has been subject to hostility and poor treatment on the basis, at least in part, of her race. This has impaired Plaintiff's rights as set forth above.

44. Defendant Sheriff is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

45. Furthermore, Defendant Sheriff knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

46. In essence, the actions of agents of Defendant Sheriff, which were each condoned and ratified by Defendant Sheriff, were of a race-based nature and in violation of the laws set forth herein.

47. The discrimination complained of herein affected Plaintiff's rights to her property subsequent to her termination from her employment with Defendant Sheriff.

48. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §2000e et seq.

49. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief.

## COUNT III
## RETALIATION
### (Against Defendant Sheriff)

50. Paragraphs 1-31 are realleged and incorporated herein by reference.

51. Defendant Sheriff is an employer as that term is used under the applicable statutes referenced above.

52. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting her under the laws identified above.

53. The foregoing unlawful actions by Defendant Sheriff were purposeful.

54. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant Sheriff, filed a charge of discrimination and lawsuit and was the victim of retaliation thereafter, as related in part above.

55. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter including without limitation the taking of her property, refusing to take reports and allowing her neighbors to intrude on her private property.

56. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive relief.

## COUNT IV
## INVERSE CONDEMNATION
**(Against Defendants Sheriff and County)**

57. Paragraphs 1-31 are realleged and incorporated herein by reference.

58. This is an action for the unlawful taking of private property without compensation in violation of the United States and Florida Constitutions. The Florida constitutional claims asserted herein involve the same transactions and

13

occurrences as set forth in the above federal claims and constitute the same case and controversy for purposes of this Court's exercise of its supplemental jurisdiction to decide the state law claims.

59. By declaring and representing Plaintiff's driveway to be a public roadway and providing signage as a public road and/or by actively interfering with Plaintiff's property rights to exclude unwelcomed persons and trespassers from Plaintiff's property, the Defendants have acted in concert to substantially interfere with Plaintiff's private property rights. Such substantial interference with property rights has been for more than a momentary period and has resulted in a substantial deprivation of beneficial use or value of those property rights.

60. Although the Defendant County has been delegated eminent domain powers, the County has taken a portion of Plaintiff's property for public use as a county road, without formal exercise of its eminent domain powers and without providing the due process afforded to property owners under Florida's Constitution and statutes or payment of full compensation as guaranteed by Article X, Section 6, of the Florida Constitution.

61. The Defendants, have acted in concert to effect a taking of a public roadway across Plaintiff's property, and are jointly and severally liable to Plaintiff for the value of the property interests taken, damages to Plaintiff's remainder property not taken resulting from the taking and the public use of the property taken,

or severance damages, and Plaintiff's reasonable attorneys' fees and costs, and all other reasonable litigation costs including Plaintiff's expert fees and costs incurred in the defense of Plaintiff's property rights.

62. Plaintiff also demands injunctive relief restraining Defendants from interference with Plaintiff's efforts to protect her property from intrusion by unwanted persons and trespassers and such other relief as the Court may determine to be just and equitable. If the unlawful public access across Plaintiff's property is ended by such injunctive relief, Defendants' actions would constitute the temporary, but still compensable, taking of the Plaintiff's property rights, and the duration and extent of the taking would require Court determination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant Sheriff for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant Sheriff under the applicable counts set forth above, mandating Defendant Sheriff's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant Sheriff and for Plaintiff awarding all legally-available general and compensatory

  damages and economic loss to Plaintiff from Defendant Sheriff for Defendant's violations of law enumerated herein;

(d)   enter judgment against Defendant Sheriff and for Plaintiff permanently enjoining Defendant Sheriff from future violations of law enumerated herein;

(e)   enter judgment against Defendant Sheriff and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)   award Plaintiff interest where appropriate; and

(g)   grant such other further relief as being just and proper under the circumstances including reinstatement.

Plaintiff further demands judgment:

(h)   declaring that both Defendants have acted in concert to unlawfully take Plaintiff's property or a substantial interest therein;

(i)   determining the date and extent of the unlawful taking; and

(j)   declaring Defendants' joint and several liability for payment to Plaintiff of full compensation, attorneys' fees and costs;

(k)   setting a jury trial for determination of the amount of compensation to be awarded for the taking; and

(l) ordering such other and further relief including but not limited to injunctive relief enjoining against any future interference by either or both Defendants with Plaintiff's right to exclude unwanted persons and trespassers for her private property.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 21st day of June, 2023.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
marie@mattoxlaw.com

and

/s/ J. Stanley Chapman
J. Stanley Chapman [FBN: 0699004]
THE CHAPMAN LAW FIRM, PLLC
313 Johnston Street
Tallahassee, Florida 32303
Tel. (850) 590-7942
Fax (850) 222-2933
schapman@schapman.law

ATTORNEYS FOR PLAINTIFF