## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

VELVET ANN SAULSBERRY,

      Plaintiff,                    Case No.: 5:23-cv-00377-TJC-PRL

v.

BILLY WOODS, in his official capacity
as SHERIFF of MARION COUNTY, and
MARION COUNTY, FLORIDA, a political
Subdivision of the State of Florida,

      Defendant.

_____/

## <u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW</u>

COMES NOW, Defendant, BILLY WOODS, in his official capacity as SHERIFF OF MARION COUNTY, FLORIDA (the "Sheriff"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby files this Motion to Dismiss Plaintiff's Amended Complaint (Doc. 4, the "Complaint").

## <u>BACKGROUND</u>

It has been nearly five years since Saulsberry was employed by the Marion County Sheriff's Office. Yet Saulsberry now makes employment law claims against the Sheriff exclusively based on the manner in which deputies responded to her recent dispute with neighbors over the use of a dirt road that sits adjacent to property she owns. These new claims are nonsensical and should be dismissed with prejudice.

Saulsberry was formerly employed as a corrections officer with the Marion County Sheriff's Office. Saulsberry was terminated on November 8, 2018 for gross negligence when she allowed an inmate to escape from her supervision. At the time, Saulsberry was unaware of the escape because she was either asleep or reading while wearing earbuds in her ears. Saulsberry thereafter sued the Sheriff for wrongful termination alleging race discrimination and retaliation—which are subject of another lawsuit before this Court.[1]

The subject matter of Saulsberry's second lawsuit involves a civil dispute with her neighbors that occurred approximately three years after her employment with the Marion County Sheriff's Office was terminated. The factual basis for the Complaint begins with her purchase of her property on July 29, 2021 (Complaint, Ex. A) and runs through her interactions with deputies in April 2022 (Complaint, ¶ 27). By her own admission (Complaint, ¶ 7), she was not employed by the Sheriff during this timeframe. The employment law statutes cited in Counts I-III, therefore, do not apply as a

---

[1] See Velvet Ann Saulsberry v. Billy Woods, in his official capacity as Sheriff of Marion County, Florida, filed November 23, 2020, U.S. District Court for the Middle District of Florida, Case No.: 5:20-cv-00570-TJC-PRL. Saulsberry has struggled to develop her claims in that case as well. On September 21, 2022, this Court dismissed Saulsberry's Second Amended Complaint in that case as a shotgun pleading. The Court noted Saulsberry should "not try to bring in the kitchen sink" and would be given "one final opportunity to replead."

matter of law, and Saulsberry can never make out a *prima facie* case under them.

Saulsberry's inverse condemnation claim in Count IV is similarly fraught with error. In short, Saulsberry asserts a portion of SW 27th Avenue in Ocala, Florida is her own private property. Beginning in January 2022, Saulsberry began using wooden poles and fence posts to completely block access and use of the roadway—which is the only access point for 17 other residential properties south of Saulsberry's property. The Marion County Engineer's Office and Marion County Attorney's Office have advised Saulsberry the road was conveyed as a public right-of-way easement to Marion County as early as 1951. Subsequent conveyances and recorded instruments over the course of many decades reflect the right-of-way easement. Maps and atlases over several decades are also consistent with this status.

Saulsberry's inverse condemnation claim in Count IV is not ripe under well-established law because Saulsberry has not exhausted all state court remedies. But even if it were ripe, Count IV must still be dismissed because it is hopelessly vague and indefinite in terms of identifying the actual act of the Sheriff which amounts to any taking.

WHEREFORE, the Sheriff respectfully requests that this Court grant this Motion and enter an Order dismissing the Amended Complaint (Doc 4), with prejudice, and granting further relief as the Court deems appropriate.

## MEMORANDUM OF LAW

### I.   Legal Standard for Motion to Dismiss.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter to . . . 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering such a motion, the court "should eliminate any legal conclusions contained in the complaint, and then determine whether the factual allegations, which are assumed to be true, give rise to relief." Chapman v. USPS, 442 F. App'x 480, 482–83 (11th Cir. 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Accordingly, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

Additionally, if it is clear that the plaintiff cannot amend the complaint to plead sufficient facts, a court has the discretion to dismiss the case with prejudice. See Daewood Motor Am., Inc. v. Gen. Motors Corp., 459 F.3d 1249, 1260–61 (11th Cir. 2006). Denying leave to submit an amended complaint is "justified by futility when the 'complaint as amended is still subject to

dismissal.'" <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting <u>Halliburton & Assocs., Inc. v. Henderson, Few & Co.</u>, 774 F.2d 441, 444 (11th Cir. 1985)).

## II.   Saulsberry Cannot State a Claim for Discrimination Under Title VII or the FCRA (Counts I-II).

Saulsberry has alleged nothing new that would be relevant to an employment discrimination or retaliation claim. Specifically, Saulsberry cannot properly apply the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, or the Florida Civil Rights Act, Florida Statute 760.10, against the Sheriff because her circumstances her claims are based on occurred after the employment relationship ended.

Title VII applies to employers, see 42 U.S.C. § 2000e-2(b), and employees, see 42 U.S.C. § 2000e-2(f).[2] Title VII prohibits discrimination only with respect to "compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), or with respect to "employees or applicants for employment in

---

[2] Saulsberry makes a passing reference to "Chapter 760, Florida Statutes" in the first paragraph of the Complaint. To the extent she also seeks relief under the Florida Civil Rights Act, Florida courts have repeatedly emphasized that the Florida act is to be construed in tandem with Title VII. <u>See, e.g.</u>, <u>Byrd v. BT Foods, Inc.</u>, 948 So. 2d 921, 925 (Fla. 4th DCA 2007) (noting that the Florida Civil Rights Act "is modeled after Title VII, so that federal case law regarding Title VII is applicable to construe the Act"); <u>Castleberry v. Edward M. Chadbourne, Inc.</u>, 810 So. 2d 1028, 1030 n.3 (Fla. 1st DCA 2002) (same); <u>see also</u> <u>Joshua v. City of Gainesville</u>, 768 So. 2d 432, 435 (Fla. 2000) (observing that the stated purpose and statutory construction directive of chapter 760 "are modeled after Title VII of the Civil Rights Act of 1964"). In short, state law tracks federal law in relevant respects, so the same analysis applies to both. Saulsberry has not asserted the contrary. For convenience, this Motion consistently refers to Title VII without separately referring to corresponding state law.

any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." 42 U.S.C. § 2000e-2(a)(2). The Eleventh Circuit has made clear that Title VII thus deals only with claims of an "employee." See, e.g., Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1242 (11th Cir. 1998) ("we have held that only those plaintiffs who are 'employees' may bring a Title VII suit"). Because Saulsberry was not an "employee," Title VII does not apply. Murray v. Am. Red Cross Capital Area Chptr, No. 4:07cv161-RH/WCS, 2008 U.S. Dist. LEXIS 112052, at *7-8 (N.D. Fla. Jan. 1, 2008).

Because she was not employed at the time of the relevant events, it follows that Saulsberry cannot make a *prima facie* case for discrimination under those statutes. In order to establish a *prima facie* case of discrimination under Title VII and the FCRA, Saulsberry must demonstrate that she was subjected to adverse employment action. See Holifield v. Reno, 115 F.3d 1555 (11th Cir. 1997). Saulsberry retains the ultimate burden of proving that the Sheriff intentionally discriminated against her and must produce evidence to support an inference that the Sheriff based an employment decision on an illegal criterion. Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1443 (11th Cir. 1998) (emphasis added). Saulsberry, however, points to no employment decision at all. She has not, and cannot, allege any new adverse job action.

Saulsberry's employment with MCSO was terminated over four years ago and there is absolutely no allegation or evidence of any new adverse job action.

### III.   Saulsberry Cannot State a Claim for Retaliation Under Title VII or the FCRA (Count III).

Saulsberry, for the same reasons, cannot establish a *prima facie* case of retaliation. In limited circumstances, courts have permitted claims to proceed based on postemployment actions brought by former employees where they were dissuaded from filing a charge of discrimination. See Robinson v. Shell Oil Co., 519 U.S. 337 (1997). But the Supreme Court has made clear that relief is only available in a claim for postemployment retaliation to the extent that "a reasonable person would have found the challenged action materially adverse..." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006). "Whether a particular [action] is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all circumstances..." Id. at 70-71.; see also Worley v. City of Lilburn, No. 09-15537, 2011 WL 43543, at *3 (11th Cir. Jan. 6, 2011). Considering this objective standard, Saulsberry cannot claim that the deputies alleged unprofessional treatment and taking of her property—which the Sheriff denies—are materially adverse and legally sufficient to form the basis of a retaliation claim under Title VII or the FCRA.

## IV.  Saulsberry's Inverse Condemnation Claim is Not Ripe and Fails to State a Claim (Count IV).

The language of the Complaint is unclear as to whether Saulsberry intends to assert a takings claim under the Fifth Amendment of the United States Constitution or a claim for inverse condemnation under Florida common law. No matter which claim is intended, Saulsberry has failed to state a cause of action. The law is longstanding and well established that such a claim will not lie until Saulsberry has exhausted all state court remedies.

Inverse condemnation claims brought pursuant to the Fifth Amendment to the U.S. Constitution are subject to a ripeness requirement. Whether a district court has subject matter jurisdiction to adjudicate a Fifth Amendment just compensation claim depends on the question of ripeness. Reahard v. Lee County, 30 F.3d 1412, 1415 (11th Cir. 1994). The ripeness requirement flows from the federal court's case or controversy-based jurisdiction. See Section 2, Article 3, United States Constitution. Only if the plaintiff is unable to obtain a remedy at the administrative and state court level may an action in federal court be brought for taking without just compensation. Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 637 F.Supp.2d 1002, 1016-17 (M.D. Fla. 2007) (citing Williamson County Reg. Planning Comm. v. Hamilton Bank, 473 U.S. 172, 186, 194-95 (1985).

In the context of an inverse condemnation action, the ripeness requirement is justified by the federal court's need to determine whether a constitutional deprivation has occurred. For a constitutional deprivation to occur, the state must "fail to provide an adequate post deprivation remedy for the property loss." Williamson County, 473 U.S. at 195; see also Reahard v. Lee County, 30 F.3d, 1412 (11th Cir. 1994); Executive 100 v. Martin County, 922 F.2d 1536 (11th Cir. 1991) (plaintiff must seek compensation in state court if state compensation remedy is available). "Florida provides an adequate procedure for seeking just compensation, namely, a remedy for inverse condemnation." Abusaid at 1017, n. 13 (citing Joint Ventures, Inc. v. Dept. of Transp., 563 So.2d 622, 627 (Fla. 1990).

Saulsberry has failed to make any allegations to establish her takings claim is ripe. Here, regardless of other factual and legal issues, it is not disputed that Saulsberry makes no allegation, much less any evidentiary showing, that she has sought compensation through inverse condemnation and been denied by the state. Under these circumstances, Saulsberry's takings claim is premature. Abusaid, 637 F. Supp. 2d at 1017; Fields v. Sarasota Manatee Airport Auth., 953 F.2d 1299, 1305 (11th Cir. 1992) ("The lack of ripeness deprives the federal courts of subject matter jurisdiction over a takings clause claim prior to the completion of the requisite state court

proceedings."). As a result, the law is well settled that Count IV should be dismissed.

Saulsberry has also failed to state a cause of action for inverse condemnation under Florida state law. Proof that the governmental body has effected a taking of the property is an essential element of an inverse condemnation action. Kendry v. Division of Admin., 366 So. 2d 391, 393-94 (Fla. 1978); Rubano v. Dept. of Transportation, 656 So. 2d 1264, 1266 (Fla. 1995). Saulsberry's mere conclusory allegations that a portion of SW 27th Avenue is her own private property are insufficient and are not plausible on their face. Ashcroft, 556 U.S. at 678. Saulsberry was advised by the Marion County Engineer's Office and Marion County Attorney's Office that the subject roadway was conveyed as a public right-of-way easement to Marion County as early as 1951. Subsequent conveyances and recorded instruments over the course of many decades reflect the right-of-way easement. Maps and atlases over several decades are also consistent with this status.[3] And while courts must liberally construe and accept as true allegations of fact in a complaint,

---

[3] Copies of the relevant recorded instruments are attached as **Composite Exhibit A**. The Court may take judicial notice of public records when considering a motion to dismiss. Rubinstein v. Keshet Inter Vivos Tr., No. 17-61019-Civ, 2018 U.S. Dist. LEXIS 181023, at *13 (S.D. Fla. Oct. 17, 2018) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1279-80 (11th Cir. 1999); Rabago v. Deutsche Bank Nat'l Trust Co., 2011 U.S. Dist. LEXIS 60262, 2011 WL 2173811, at *2 (C.D. Cal. June 1, 2011) (taking judicial notice of recorded security deed and assignment); Letvin v. Amera Mortg. Corp., 2011 U.S. Dist. LEXIS 45796, 2011 WL 1603635, *1 n. 2 (D. Haw. Apr. 27, 2011) (taking judicial notice of mortgage, note, assignment and other documents because they were public documents and plaintiff offers no explanation as to why the exhibits are in dispute).

courts "need not accept factual claims," "which run counter to facts of which the court can take judicial notice." <u>Campos v. I.N.S.</u>, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998). Saulsberry is not able to question the reliability of the contents of the recorded instruments in the official records of Marion County, Florida. In other words, Saulsberry cannot explain why the publicly available records should not be taken as true or why the Court should question the authenticity of these documents. Because Saulsberry offers mere conclusory allegations that a portion of SW 27th Avenue is her own private property and was allegedly taken, her claim is hopelessly vague and must be dismissed.

## V.   Saulsberry's Complaint is a Shotgun Pleading.

The Complaint is a shotgun pleading because it fails to give the Sheriff adequate notice of the grounds upon which each cause of action rests. Shotgun pleadings violate the federal pleading requirements. <u>Weiland v. Palm Beach County Sheriff's Office</u>, 792 F.3d 1313 (11th Cir. 2015). In <u>Weiland</u>, the Eleventh Circuit identified four types of shotgun complaints, the second which is pertinent here:

> The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.

Id. at 1322. "Relevant to the case at bar, a shotgun complaint also may 'begin with a long list of general allegations' that are later 'incorporated by reference into each count of the complaint.'" Boswell v. Gee, No. 8:18-cv-1769-T-17AEP, 2019 WL 3718206, at *2 (M.D. Fla. Aug. 6, 2019) (quoting Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1333 (11th Cir. 1998)). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, 792 F.3d at 1323.

This Court has recently dismissed complaints where the general allegations are later incorporated by reference into each count of the complaint. See Saulsberry v. Woods, No. 5:20-cv-570-TJC-PRL, 2022 U.S. Dist. LEXIS 170950, at *3 (M.D. Fla. Sep. 21, 2022) (noting that Plaintiff's counsel "has repeatedly been cautioned in other cases . . . by incorporating all of her factual allegations into every count, her complaint presents a shotgun pleading and must be replead"); see also Turner v. Williams, No. 3:19-cv-641-J-32PDB, 2020 WL 1904016, at *3 (M.D. Fla. April 17, 2020) (dismissing complaint drafted by Plaintiff's counsel for violating shotgun pleading rules by improperly incorporating every factual allegation into every count); Smith v. City of Atlantic Beach, No. 3:18-cv-1459-J-34MCR, 2019 WL 2330470, at *2, n.4 (M.D. Fla. May 31, 2019) (citing multiple cases where Plaintiff's counsel's pleadings

have been criticized for the "the vague and conclusory manner in which she drafts her pleadings"); <u>Taylor v. Shands Teaching Hosp. & Clinics, Inc.</u>, No. 1:20-cv-9-AW-GRJ, 2020 U.S. Dist. LEXIS 259829, at *3 (N.D. Fla. June 26, 2020) (dismissing complaint drafted by Plaintiff's counsel, citing <u>Weiland</u>, and stating "the remaining allegations should be tied clearly to one of the remaining causes of action. And each count must incorporate only allegations relevant to it.").

The Eleventh Circuit has articulated that shotgun complaints are "altogether unacceptable," as they "exact an intolerable toll on the trial court's docket . . . ." <u>Cramer v. State of Fla.</u>, 117 F.3d 1258, 1263 (11th Cir. 1997). "[I]n addition to delaying a just disposition of the case at the undue expense of one or both of the parties, shotgun pleadings, if tolerated by the court, lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard." <u>Davis v. Coca-Cola Bottling Co. Consol.</u>, 516 F.3d 955, 982 (11th Cir. 2008).

Here, the Complaint, as amended, includes a lengthy statement of the facts regarding her recent dispute with neighbors over land ownership and use of an adjacent dirt road. "This is all well and good, insofar as it goes, but when [s]he reaches the individual counts, Plaintiff reincorporates all of these background facts and then alleges the elements of [her] claims in vague and conclusory terms." <u>Smith v. City of Atlantic Beach</u>, No. 3:18-cv-1459-J-34MCR,

2019 WL 2330470, at *2 (M.D. Fla. May 31, 2019). Saulsberry incorporates every single factual allegation into each count. Saulsberry, therefore, fails to identify which facts form the basis for each element of each cause of action. For instance, Count IV alleges unlawful taking of private property, but incorporates allegations related to "harassment" and "ongoing discrimination." Likewise, Counts I and II assert race discrimination in employment against the Sheriff, but incorporate allegations surrounding her property dispute with various neighbors. Similarly, Count III asserts unlawful retaliation against the Sheriff "after Plaintiff reported or opposed unlawful employment practices," but incorporates allegations related to the nature of the easements encumbering her property. It cannot be that all of these allegations relate to every count. Yet the Court and the Sheriff are left to guess as to which allegations form the basis for which count or counts.

These pleading deficiencies make it impossible for the Sheriff to discern the factual basis for each of the four causes of action set forth in the Complaint. If Saulsberry is permitted to file another amended complaint, the Sheriff respectfully requests that the Court order her to connect factual allegations with the elements of each cause of action as required by Rule 8(a).

Based on the foregoing reasons, the Sheriff respectfully requests that the Court grant this Motion and enter an Order: (1) dismissing the Amended

Complaint with prejudice; and (2) granting further relief as the Court deems appropriate given the circumstances.

### LOCAL RULE 3.01(g) CERTIFICATION

Counsel for the Sheriff conferred with Saulsberry's counsel regarding the relief sought by initiating an email exchange on August 5, 2023. Saulsberry's counsel indicated she had insufficient information to make an informed decision as to the relief requested. Because Saulsberry's counsel has not yet indicated whether or not the relief sought is opposed, the undersigned will try diligently for three days to contact the opposing party, pursuant to Rule 3.01(g), and promptly provide a supplemental certification thereafter.

I HEREBY CERTIFY that on August 7, 2023, a true and correct copy of the foregoing was filed with the Clerk of the Court via the CM/ECF System, which will send a notice of electronic filing to counsel of record.

Respectfully submitted on August 7, 2023.

/s/ *Justin S. Swartz*
R.W. Evans, Esq.
Florida Bar No.: 198862
revans@anblaw.com
Justin S. Swartz
Florida Bar No.: 91232
jswartz@anblaw.com
**ALLEN, NORTON & BLUE, P.A.**
906 N. Monroe Street
Tallahassee, Florida 32303
(850) 561-3503 Phone
*Counsel for Defendant*

15



**Marion County**
**Board of County Commissioners**

County Attorney

601 SE 25th Ave.
Ocala, FL 34471
Phone: 352-438-2330
Fax: 352-438-2331

February 22, 2022

Velvet Saulsberry
12404 SW 16th Avenue
Ocala, Florida 34473

   RE:  Dirt Roadway on Western Boundary
       of Parcel # 35770-034-00

Dear Mrs. Saulsberry,

As you are aware, Marion County has become an interested party in this matter due to the possible existence of an "unmaintained county road" across the western boundary of your property. This matter came to the attention of Marion County after you placed several wooden fence posts in the disputed right of way on January 14, 2022.

It appears you purchased your property via General Warranty Deed on July 29, 2021, said instrument being recorded at Book 7533, Pages 1189-1190 on August 4, 2021 of the official records of Marion County, Florida. My understanding is that you relied upon a pre-existing survey that did not reference any county right of way or private easement of any kind along the western boundary of your property. Additionally, the legal description of your General Warranty Deed contains a legal description of the property that varies from descriptions used in previous conveyances.

Marion County has undertaken an examination of available records to ascertain whether any *recorded instrument* evidences the existence of any county right of way or private easement on the property. The following findings are presented below:

- The disputed point of ingress/egress has been identified on several maps as SW 27th Avenue for many years by signage installed by Marion County. An image capture from April 2021 is incorporated herein which depicts the property and the disputed dirt roadway.

## EXHIBIT A

*Empowering Marion for Success*

www.marioncountyfl.org



- Marion County was able to locate a township map from 1963 which depicts what is now known as SW 27th Avenue/CR 475A extending southbound along the western boundary of Section 25 (the location of the disputed roadway) into the western boundary of Section 36 and terminating therein. This roadway extends from the western boundary of Section 1, the northernmost section of the township, southbound across the western boundary of Section 12, Section 13, Section 24, Section 25 until termination into Section 36, as noted.

- The Marion County Land Atlas (1963) and its incorporated legend depict SW 27th Avenue as a secondary road along the western boundary of Section 25 continuing into and terminating into Section 36.

- The earliest identifiable *recorded instrument* was recorded on August 30, 1952 at Book 551, Page 5570 of the official records of Marion County, Florida. The conveyance is titled "Right of Way Deed" and conveys the west 25 feet of the SW ¼ of SW ¼ of Section 25 and the West 25 feet of the NW ¼ of NW ¼ of Section 36. This instrument reveals what Marion County believes was the original pathway for SW 27th Avenue and is consistent with subsequent maps that were printed in 1963.

- Another conveyance recorded on September 2, 1961 at Book 81, Page 442 of the official records of Marion County, Florida refers to a "newly graded road cutting across the Southwest corner of said 40 acre tract." Although the maps referenced earlier depict SW 27th Avenue as a roadway with right angles, the curvature of the roadway seems to have been created to facilitate the uninterrupted flow of traffic.

- Marion County has also reviewed several recorded instruments of neighboring properties to seek supplemental insight on the history of the disputed roadway. The current Oak Bend property (Marion County Parcel 35770-051-01) situated immediately to the west of your property specifically identifies a "County Road right of way" in the warranty deed recorded on August 11, 1981 at Book 1077, Page 0935. Additionally, the current 4 C Family Trust LLC property (Marion

County Parcel 35770-049-00) situated immediately south of the Oak Bend parcel references a "prescriptive easement of trail along East boundary" in the warranty deed recorded on January 3, 1986.

- Marion County further notes the motoring public has continued to utilize this area as a point of ingress and egress for several decades prior to your acquisition of the property on July 29, 2021. Currently, 17 properties with addresses assigned by Marion County exist south of your property and may claim beneficial use of the dirt roadway.

- Marion County has been unable to locate any road grading records for the disputed portion of your property and no cognizable proof of maintenance of the roadway can be provided. However, the roadway appears to be well traveled, free of vegetative overgrowth and maintained over the years by property owners who have utilized this roadway to access their property.

- **Based on the totality of the circumstances, Marion County believes the evidence presented establishes that the dirt roadway along the western boundary of your property has been openly and regularly used as a point of ingress and egress by the motoring public for multiple decades. Furthermore, we ask that you not construct any buildings or fences in this area given the high probability of accidents or injury to persons utilizing the roadway that could give rise to liability claims against Marion County and yourself.**

- Marion County suggests, and county personnel has already advised, that you consult with and retain the services of a private attorney well-versed in real property law if you wish to litigate the issue. The Florida Bar Lawyer Referral Service may be able to assist you in locating an attorney and can be contacted at (800) 342-8011.

I understand this communication does not convey the outcome that you desired, however, we are legally bound to recognize the property rights of all persons who may have a claim of beneficial use of the parcel. I am sorry I cannot write you differently.

Matthew G. Minter
County Attorney

cc:     Tracy Straub – Assistant County Administrator



TOWNSHIP 16 SOUTH, RANGE 21 EAST
MARION COUNTY, FLORIDA

T.16 S., R.21 E.

MARION COUNTY

LAND ATLAS

© 1963

...under authority and by virtue of Section 204(g) of the National Housing Act, as amended.

Signed, sealed and delivered
in the presence of:

Sarah H. Sanders   E. E. H.

Ruby M. Brooking

WALTER L. GREENE                    (SEAL)
As Federal Housing Commissioner

By   Clyde L. Powell            (SEAL)
CLYDE L. POWELL
Assistant Federal Housing Commissioner

($6.80 Fla. & $7.70 U. S. Doc. Stamps Cancelled)

DISTRICT OF COLUMBIA :   ss

Before me personally appeared CLYDE L. POWELL, who is personally well known to me and known to me to be the duly appointed Assistant Federal Housing Commissioner and the person who executed the foregoing instrument bearing date August 1, 1952, by virtue of the authority vested in him by Section 204(g) of the National Housing Act, as amended, and acknowledged before me that he executed the same as Assistant Federal Housing Commissioner, for and on behalf of Walter L. Greene, as Federal Housing Commissioner, for the purposes therein expressed.

WITNESS my hand and official seal this 1st day of August, 1952.

(Notarial Seal)

Dorotha F. Airhart
Notary Public in and for the District of Columbia
My Commission Expires March 14, 1955.

Section 204(g) of the National Housing Act, as amended......"The power to convey and execute in the name of the Commissioner deeds of conveyance, deeds of release, assignments and satisfactions of mortgages, and any other written instrument relating to real property or any interest therein heretofore or hereafter acquired by the Commissioner pursuant to the provisions of this Act, may be exercised by the Commissioner or by any Assistant Commissioner appointed by him, without the execution of any express delegation of power or power of attorney......."

The foregoing is a true record of the original, filed and recorded August 30th, A. D., 1952.

_____ Clerk.

By _____ D.C.

# 5070

RIGHT OF WAY DEED

THIS INDENTURE, Made this 3rd day of September, A. D. 1951, between R. H. Redding, (single) of Marion County, Florida, party of the first part, and MARION COUNTY, a political subdivision of the State of Florida, party of the second part,

WITNESSETH:

That the said party of the first part, for and in consideration of the sum of ONE DOLLAR ($1.00) and other good and valuable considerations, to him in hand paid by the said party of the second part, receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed unto the said party of the second part, the following described real property, situate, lying and being in Marion County, Florida, to-wit:

The West 75 feet of the SW¼ of SW¼, of Section 25, and the West 25 feet of the NW¼ of SW¼ of NW¼ of Section 36, all being in Township 16 South, Range 21 East.

This deed re-filed and re-recorded for the purpose of correcting error in description.

It is a condition of this deed that the property herein conveyed shall be used for road right-of-way and that if same is abandoned for such use, then and in that event said property shall revert to the grantor his heirs and assigns.

IN WITNESS WHEREOF, the said party of the first part has hereunto set his hand and seal
day and year first above written.

Signed, sealed and delivered
in our presence as witnesses:                     R. H. Redding          (SEAL)

C. H. Rogers

Mrs. Fanny Jordan          (10¢ Fla. Doc. Stamp Cancelled)

STATE OF FLORIDA
COUNTY OF MARION

Before me, the undersigned authority, personally appeared R. H. Redding (single) to me well
known and known to me to be the individual described in and who executed the foregoing instrument,
and he acknowledged before me that he executed the same freely and voluntarily for the uses and
purposes set forth.

WITNESS my hand and official seal at Ocala, County and State aforesaid, this 3rd day of
September, A. D. 1941.

(Notarial Seal)          C. H. Rogers
                         Notary Public State of Florida at Large.
                         My commission expires: March 2nd, 1943.

The foregoing is a true record of the original, refiled and re-recorded August 30th, A. D. 1952.

                         _____ Clerk.

JUDICIAL BONDS

**WARRANTY DEED**
**STATUTORY**

9830

BOOK **81** PAGE **442**

This Indenture, made this 24th day of August A D 196 1.

between **Evan Burley and his wife, Hassie Johnson Burley,**

of the County of **Marion**, in the State of **Florida**, part ies of the first part, and

**George Simmons and his wife, Mary A. Simmons,**

of the County of **Marion**, in the State of **Florida**, part ies of the second part,

Whose Post Office address is Route 2, Box 73, Ocala, Florida

WITNESSETH That the said part ies of the first part, for and in consideration of the sum of
Ten and no/100 — — — — — — — — — — — — — — — — — — — — Dollars,
and other good and valuable considerations to them in hand paid by said part ies of the second part,
the receipt whereof is hereby acknowledged, have granted, bargained and sold to the said part ies of
the second part, their heirs and assigns forever, the following described land, situate, lying and being in the
County of **Marion** State of Florida, to wit

All of the Northwest 1/4 of the Southwest 1/4 of Section 25, Township 16 South,
Range 21 East, lying Southwest of the newly graded road cutting across the
Southwest corner of said 40 Acre tract, being approximately describable
as: Commencing at the Southwest corner of the Northwest 1/4 of Southwest
1/4 of Section 25, Township 16 South, Range 21 East, run thence East 260 feet
along the South boundary of said 40 Acre tract, thence Northwesterly to a point
on the West boundary of said Section 416 feet North of the Point of Beginning,
thence South to the Point of Beginning.

Subject to use restrictions of record.



FILED

And the said part ies of the first part ies hereby fully warrant the title to said land, and will defend
the same against the lawful claims of all persons whomsoever except taxes for year 1961.

IN WITNESS WHEREOF, The said parties of the first part have hereunto set their
hand and seal s the day and year first above written.
Signed, sealed and delivered in our presence as witnesses:

................................................................ (SEAL)

................................................................ (SEAL)

................................................................ (SEAL)

................................................................ (SEAL)

STATE OF FLORIDA
COUNTY OF

I HEREBY CERTIFY that on this day before me, an officer duly authorized in the State aforesaid and in
the county aforesaid to take acknowledgments, personally appeared **Evan Burley and his wife,**
**Hassie Johnson Burley,**

to me known to be the person s described in and who executed the foregoing instrument and they
acknowledged before me that the y executed the same.

WITNESS my hand and official seal in the County and State last aforesaid this day of
August A D 196 1

My commission expires ........................ Notary Public

This instrument filed and recorded Sept. 2, 1961 in Deed Book 81 Page 442

Record Verified

John F. Nicholson, Clerk of Circuit Court

By ........................................ D.C.

4.00
1386.45                81-034669                          Ōak Bend    *mhp*
                                                          mobile home park

This instrument prepared by
LANDIS V. CURRY, JR.
AYRES, CLUSTER, CURRY, McCALL & BRIGGS, P.A.
ATTORNEYS AT LAW
P. O. Box 1148 - Ocala, Florida 32670

**WARRANTY DEED**
**STATUTORY**

O.R.
BOOK **1077** PAGE **0935**

This Indenture, made this    11    day of    August    A.D. 19 81

between

F. D. H. MacKENZIE, JR., Individually and as Trustee, and his wife, MARY
ELLEN MacKENZIE and DICK McGINLEY and his wife, MARY McGINLEY

of the County of    Marion    , in the State of    Florida    , part ies of the first part, and

BRANDYWINE MANAGEMENT CORPORATION, a Delaware corporation

of the County of    New Castle    , in the State of    Delaware    , party    of the second part,

Whose Post Office address is    Suite 1100, 300 Delaware Avenue, Wilmington, Delaware    19801

WITNESSETH, That the said part ies    of the first part, for and in consideration of the sum of
———————— Ten and No/100 ($10.00) ———————————————— Dollars,
and other good and valuable considerations to them in hand paid by said part y    of the second part,
the receipt whereof is hereby acknowledged, have    granted, bargained and sold to the said part y    of
the second part, its heirs and assigns forever, the following described land, situate, lying and being in the
County of    Marion    , State of Florida, to-wit:

South ½ of the NE ¼ of the SE ¼; EXCEPT County Road right
of way and South ½ of the NW ¼ of the SE ¼, lying East of
Interstate 75; and SW ¼ of SE ¼, lying East of Interstate 75,
all lying in Section 26, Township 16 South, Range 21 East,
Marion County, Florida.  Containing 61.61 acres, more or
less.

And the said part ies of the first part do    hereby fully warrant the title to said land, and will defend
the same against the lawful claims of all persons whomsoever, except taxes for year    1981.

IN WITNESS WHEREOF, The said part ies    of the first part    have    hereunto set    their
hand s    and seal s    the day and year first above written
Signed, sealed and delivered in our presence as witnesses:

_____        _____ (SEAL)
                                         F. D. H. MacKenzie, Jr.,    Individually and as
                                         Trustee
_____        _____ (SEAL)
                                         Mary Ellen MacKenzie
                                         _____ (SEAL)
                                         Dick McGinley
                                         _____ (SEAL)
                                         Mary McGinley

STATE OF FLORIDA
COUNTY OF MARION

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State aforesaid and in
the County aforesaid to take acknowledgments, personally appeared
F. D. H. MacKENZIE, JR., Individually and as Trustee, and his wife, MARY ELLEN

Case 3:21-cv-00371-TJC-PDB   Document 11   Filed 08/07/23   Page 25 of 25 PageID 94

FTA    REC.    5.00
D.S.   1087.50
S.T. _____

THIS INSTRUMENT WAS PREPARED BY:
Florida Title & Abstract Company
216 N.E. 1 Avenue, Ocala, Florida
Karen Raym      85-11-153

BK 1424  PG 573

H C Family Trust LLC

**This Indenture,** Made the   3rd   day of   Janu..   A.D. 19 86 , Between
FRANKLIN ASPINWALL and his wife, VIRGINIA ASPINWALL

hereinafter called the grantor*, and
JAMES C. MCDONALD, as to an undivided 2/3 interest and
MARILYN G. BROWN, as to an undivided 1/3 interest.
whose mailing address is    600 Lake View Road Clearwater, Fla. 33516

hereinafter called the grantee*.

**Witnesseth,** That said grantor, for and in consideration of the sum of  ------Ten and No/100------Dollars,
and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is
hereby acknowledged, has granted, bargained and sold to the said grantee, and grantee's heirs and assigns forever,
the following described land, situate, lying and being in Marion County, Florida, to-wit:

SE 1/4 of the SE 1/4 of Section 26, Township 16 South, Range 21 East,
EXCEPT South 315 feet of East 691.43 feet.

SUBJECT TO fence encroachment shown on survey dated December 12, 1985, by
Willis C. Melvin and Perscriptive Easement of trail along East boundary,
and taxes for the currect year.

Frances E. Thigpin
BY   Nancy J. Davies   DC

RECORDED AND RECORD
VERIFIED
MARION COUNTY, FL

86-000357

1986 JAN -3  PM 4: 24

STATE OF FLORIDA
DOCUMENTARY STAMP TAX
DEPT. OF REVENUE
PB
11456    JAN -3 86    900.00

MARION COUNTY

STATE OF FLORIDA
DOCUMENTARY STAMP TAX
DEPT. OF REVENUE
PB
11456    JAN -3 86    187.50

and said grantor does hereby fully warrant the title to said land, and will defend the same against the lawful claims
of all persons whomsoever. * "Grantor" and "grantee" are used for singular or plural as context requires.
**In Witness Whereof,** Grantor has hereunto set grantor's hand and seal the day and year first above written.
Signed, sealed and delivered in our presence.

Marilyn H. Lewis
Witness No. 1
W... Mack...
Witness No. 2

Franklin Aspinwall   (Seal)
FRANKLIN ASPINWALL
Virginia Aspinwall   (Seal)
VIRGINIA ASPINWALL

**STATE OF FLORIDA,  COUNTY OF MARION.**
The foregoing instrument was acknowledged before me this   3rd   day of   January   ,19 86
by  FRANKLIN ASPINWALL and his wife, VIRGINIA ASPINWALL